IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

LIVIA PROPERTIES, LLC,

    Plaintiff,

v.                  CIVIL ACTION NO. 5:14-00053

JONES LANG LASALLE AMERICAS,
INC., et al.,

    Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the court are motions to dismiss filed by defendants Jones Lang LaSalle Americas, Inc. ("JLLA") and Comcast of California/Maryland/Pennsylvania/Virginia/West Virginia, LLC ("Comcast"). (Docs. No. 11 and 13). For the reasons expressed more fully below, those motions are **GRANTED**.

## I.  Background

According to the complaint, the allegations of which are taken as true for purposes of these motions, plaintiff, Livia Properties, II, LLC ("Livia"), is engaged in the ownership, management, and leasing of real property. See Complaint ¶ 2. On September 21, 2004, Livia entered into a lease agreement with Chelsea Communications, LLC, doing business as Adelphia Cable Communications ("Adelphia"), to lease certain property in Staunton, Virginia. See id. at ¶ 9 and Exhibit 1 thereto. The Lease Agreement provided for an initial term of 60 months and automatic renewal for an additional 60-month term extending

through November 30, 2014. See id. at ¶ 9. The Lease Agreement also provided the lessee and/or its successors the option of renewing the lease for one additional 10-year term. See id. at ¶ 9.

On August 1, 2005, Livia and Adelphia entered into a second Lease Agreement, pursuant to which Adelphia leased an additional 18,500 square feet of property, also in Staunton, Virginia. See id. at ¶ 10 and Exhibit 2 thereto. The second Lease provided for an initial term of six months commencing on August 1, 2005 and automatic one-year renewals unless terminated according to the terms of the agreement. See id. at ¶ 10.

At some point, Comcast acquired the assets of Adelphia and assumed its rights and obligations under the Lease Agreements discussed above. See id. at ¶ 11.

By 2013, Comcast had retained JLLA to act as its agent in negotiating and securing leases for its operations in the mid-Atlantic region, including the Commonwealth of Virginia. See id. at ¶ 13. To that end, Paula Thompson, an employee and/or agent of JLLA, began acting as Comcast's agent in negotiating renewal of the Lease Agreements with Livia. See id. at ¶ 14.

According to Livia, "[u]ntil January 9, 2014, the Plaintiff had every reasonable expectation that Comcast intended to renew the Lease Agreements." See id. at ¶ 15. However, on that day, Thompson contacted counsel for plaintiff and indicated that Livia

2

would be responsible for paying any commission due to JLLA.  See
id. at ¶ 16.  Livia responded that same day indicating that it
would not agree to pay any commission or fee to JLLA.  See id. at
¶ 17.  Thompson responded that Livia would "pay the commission or
there will not be a deal."  See id. at ¶ 18.  Thereafter, on or
about February 13, 2014, Thompson and JLLA transmitted a
"Commission Agreement" to Livia under which JLLA purported to be
provided brokerage services to Livia and pursuant to which Livia
would be obligated to pay JLLA a commission in the amount of 5%
of the gross rent on the renewed Lease Agreements.  See id. at ¶
19.  The Complaint does not indicate that Livia signed the
Commission Agreement.

        Against this backdrop, JLLA was involved in litigation in
the United States District Court for the Eastern District of
Virginia wherein it had sued a former client seeking commissions
allegedly due to it after securing a lease on certain property
for its client, Hoffman.  See Jones Lang LaSalle Americas, Inc.
v. Hoffman Families LLC, No. 1:13cv01011 AJT, 2014 WL 1365793
(E.D. Va. Apr. 4, 2014).  During the course of discovery in that
case, Hoffman learned that certain JLLA employees working on
their deal were not licensed as real estate salespersons or
brokers in Virginia and, therefore, claimed that no commission
was due to JLLA.  See id. at *1.

The district court agreed and concluded, as a matter of law, that the JLLA employee at issue, Arthur M. Turowski, was required to be licensed under Virginia law. See id. at *8. Because Turowski lacked the required license, the court also concluded that JLLA was prohibited from receiving any commission it would be entitled to receive under its agreement with Hoffman, even though at all material times herein it was licensed as a real estate broker. See id. Acknowledging that there is no explicit statute or judicial decision that imposes such a prohibition under Virginia law, the court nevertheless based its decision that no commission should be paid "on public policy declared by the Virginia courts." See id.

At some point, Livia discovered that Thompson was not licensed as a real estate salesperson or broker in Virginia and, on June 3, 2014, notified Comcast of this fact. See Complaint at ¶ 30. Eventually, Comcast decided not to renew the Lease Agreements with Livia and secured property elsewhere. See id. at ¶¶ 31-33.

On October 23, 2014, Livia filed suit in this court against JLLA and Comcast. The gist of Livia's complaint is that Comcast's refusal to renew the leases with Livia was because of a conspiracy on the part of JLLA and Comcast aimed at punishing Livia for refusing to pay Thompson and JLLA a commission. See Complaint at ¶ 28, 31-33. Livia's complaint contains two counts:

4

Count One is a claim for Tortious Interference with Business Expectancy and/or Prospective Economic Advantage against JLLA and Count Two is a claim for Statutory Business Conspiracy against both JLLA and Comcast. Livia seeks damages in the amount of $3,290,500.00, a figure representing the expected rent Livia would have received over the entire term of a new lease had the leases been renewed under their original terms, together with treble damages, costs, penalties, and attorney's fees.

Both JLLA and Comcast have moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). Livia filed memoranda in opposition to the motions to dismiss and defendants have filed reply briefs. On March 12, 2015, the court held a hearing on the motions.

On April 8, 2015, the United States Court of Appeals for the Fourth Circuit reversed the lower court's decision in the <u>Hoffman</u> case, finding that the involvement of a person who did not possess a Virginia real estate license in securing a lease did not render an underlying agreement to pay commission unenforceable as a matter of public policy. <u>Jones Lang LaSalle Americas, Inc. v. Hoffman Family, LLC</u>, No. 14-1454, 2015 WL 1543582, *3 (4th Cir. Apr. 8, 2015) ("In the absence of clear Virginia law standing for the proposition that a validly formed contract for real estate commissions can later become unenforceable through unlawful performance, we decline to hold

5

the validly formed Agreement unenforceable as a matter of law on the grounds of public policy."). Thereafter, the parties submitted supplemental briefs addressing the import, if any, the appellate's court's reversal had on their positions in the instant case. The motions to dismiss are ripe for decision.

## II. Standard of Review

"[A] motion to dismiss for failure to state a claim for relief should not be granted unless it appears to a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proved in support of his claim." Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989) (citation omitted) (quoting Conley v. Gibson, 355 U.S. 41, 48 (1957), and Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)). "In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Ibarra v. United States, 120 F.3d 474, 474 (4th Cir. 1997).

In evaluating the sufficiency of a pleading, the cases of Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009), provide guidance. When reviewing a motion to dismiss, under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief may be

6

granted, a court must determine whether the factual allegations contained in the complaint "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and, when accepted as true, "raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957); 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004)). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Twombly, 127 S. Ct. at 1969. As the Fourth Circuit has explained, "to withstand a motion to dismiss, a complaint must allege 'enough facts to state a claim to relief that is plausible on its face.'" Painter's Mill Grille, LLC v. Brown, 716 F.3d 342, 350 (4th Cir. 2013) (quoting Twombly, 550 U.S. at 570).

According to Iqbal and the interpretation given it by our appeals court,

> [L]egal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes. See Iqbal, 129 S.Ct. at 1949. We also decline to consider "unwarranted inferences, unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n. 26 (4th Cir. 2009); see also Iqbal, 129 S. Ct. at 1951-52.
>
> Ultimately, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

7

on its face.'" <u>Iqbal</u>, 129 S.Ct. at 1949
(quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S.
544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929
(2007)). Facial plausibility is established
once the factual content of a complaint
"allows the court to draw the reasonable
inference that the defendant is liable for
the misconduct alleged." <u>Id.</u> In other
words, the complaint's factual allegations
must produce an inference of liability strong
enough to nudge the plaintiff's claims
"'across the line from conceivable to
plausible.'" <u>Id.</u> at 1952 (quoting <u>Twombly</u>,
550 U.S. at 570, 127 S.Ct. 1955).

Satisfying this "context-specific" test does
not require "detailed factual allegations."
<u>Id.</u> at 1949-50 (quotations omitted). The
complaint must, however, plead sufficient
facts to allow a court, drawing on "judicial
experience and common sense," to infer "more
than the mere possibility of misconduct."
<u>Id.</u> at 1950. Without such "heft," <u>id.</u> at
1947, the plaintiff's claims cannot establish
a valid entitlement to relief, as facts that
are "merely consistent with a defendant's
liability," <u>id.</u> at 1949, fail to nudge claims
"across the line from conceivable to
plausible." <u>Id.</u> at 1951.

<u>Nemet Chevrolet, LTD v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250,

255-56 (4th Cir. 2009); <u>see also</u> <u>Midgal v. Rowe Price-Fleming</u>

<u>Int'l, Inc.</u>, 248 F.3d 321, 326 (4th Cir. 2001) ("The presence of

a few conclusory legal terms does not insulate a complaint from

dismissal under Rule 12(b)(6) when the facts alleged in the

complaint cannot support the legal conclusion.").

    Of a plaintiff's pleading burden with respect to a

statutory business conspiracy claim, this court recently stated:

    [A]llegations of "business conspiracy, like fraud, must
    be pleaded with particularity, and with more than 'mere

conclusory language.'" Gov't Emps. Ins. Co. v. Google,
Inc., 330 F. Supp.2d 700, 706 (E.D. Va. 2004) (citation
omitted). "[T]he circumstances to be pled with
particularity [under Rule 9(b)] . . . are the time,
place and contents of the false representations, as
well as the identity of the person making the
misrepresentation and what he obtained thereby."
Feeley v. Total Realty Mgmt., 660 F. Supp.2d 700, 712
(E.D. Va. 2009) (citation omitted); Scharpenberg, 686
F. Supp.2d at 661–62. Similarly, a claim of business
conspiracy does not comply with the specificity
requirements of Rule 9(b) and must be dismissed where
there are insufficient allegations from which to infer
a meeting of the minds and not mere parallel conduct.
Feeley, 660 F. Supp 2d at 713. "[A]n allegation of
parallel conduct and a bare assertion of conspiracy
will not suffice. . . . Hence, when allegations of
parallel conduct are set out in order to make a
[conspiracy] claim, they must be placed in a context
that raises a suggestion of a preceding agreement."
Twombly, 550 U.S. at 556–57.

AWP, Inc. v. Commonwealth Excavating, Inc., Civil Action No.

5:13cv031, 2013 WL 3830500, *3 (W.D. Va. Jul. 24, 2013)

(Urbanski, J.).

### III. Analysis

A. *Intentional Interference with Prospective Contract*

To state a cause of action against JLLA for tortious

interference with a prospective contract, Livia must plead:

(1) the existence of a business relationship or expectancy;

(2) JLLA's knowledge of the relationship or expectancy; (3) a

reasonable certainty that absent JLLA's intentional misconduct,

Livia would have continued in the relationship or realized the

expectancy; and (4) resultant damage to Livia. Chaves v.

Johnson, 230 Va. 112, 120 (1985); Glass v. Glass, 228 Va. 39,

9

51–52 (1984). The cause of action must be based on contact that either induces or causes a third party not to enter into a prospective contract with the plaintiff or prevents the plaintiff from entering into a contract. _Allen Realty Corp. v. Holbert_, 227 Va. 441, 449 (1984).

"However, if a contract is terminable at will or involves only a contract or business expectancy, a plaintiff, in order to present a prima facie case of tortious interference, must allege and prove not only an intentional interference . . ., but also that the defendant employed improper methods." _Dunlap v. Cottman Transmission Systems, LLC_, 287 Va. 207, 216 (2014) (internal quotations and citations omitted); _see also_ _Priority Auto Group, Inc. v. Ford Motor Company_, 757 F.3d 137, 143 (4th Cir. 2014) ("In certain contexts, including interference with prospective businesses and business expectancies, a plaintiff must also allege as part of its prima facie case that the defendant employed improper methods.") (internal quotations and citations omitted)."[1]

---

[1] As one court explained:

Such additional element reflects the fact that while a party to a contract generally has property rights in the performance of such contract, as well as anticipated profits therefrom, a party's interest in a contract terminable at will is essentially only an expectancy of future economic gain, and he has no legal assurance that he will realize the expected gain. . . . Viewed from a slightly different perspective, in the rough-and-tumble world comprising the competitive marketplace, a third-party competitor has the right to

Case 5:14-cv-00053-DAF   Document 30   Filed 08/07/15   Page 10 of 32   Pageid#: 285

"Methods of interference considered improper are those
means that are illegal or independently tortious, such
as violations of statutes, regulations, or recognized
common-law rules." <u>Duggin v. Adams</u>, 234 Va. 221, 227,
360 S.E.2d 832, 836 (1987).  Improper methods may
include "violence, threats or intimidation, bribery,
unfounded litigation, fraud, misrepresentation or
deceit, defamation, duress, undue influence, misuse of
inside or confidential information, or breach of a
fiduciary relationship." <u>Dunn, McCormack & MacPherson</u>,
281 Va. at 559, 708 S.E.2d at 870 (internal quotation
marks omitted).  We have also stated that methods may
be improper if "they violate an established standard of
a trade or profession, or involve unethical conduct
[, s]harp dealing, overreaching, or unfair competition."
<u>Id.</u> (internal quotation marks omitted).

<u>Dunlap</u>, 287 Va. at 216 n.5.

Livia has alleged the existence, and JLLA's knowledge of,
the negotiations between Livia and Comcast for renewal of the
Lease Agreements.  <u>See</u> Complaint ¶¶ 26, 27, 35.  It has also
alleged the reasonable certainty of renewal of the Lease
Agreements.  <u>See</u> <u>id.</u> at ¶ 34.  Furthermore, Livia has pleaded
that, absent JLLA's intentional misconduct, Comcast would have
renewed the leases.  <u>See</u> <u>id.</u> at ¶ 41.

Conceding that Livia has properly met its pleading burden
with respect to the aforementioned "traditional" elements of a

---

compete, and necessarily owes a lessor [sic] duty not
to interfere with a competitor's mere expectancy of
future economic gain (terminable at will contract), as
compared with the duty not to interfere with a
competitor's contractual property right (non-terminable
at will contract).

<u>DePuy Synthes Sales, Inc. v. Jones</u>, Civil No. 2:13cv392, 2014 WL
1165852, *3 (E.D. Va. Mar. 21, 2014) (internal citations and
quotations omitted).

tortious interference claim, JLLA nevertheless argues that Count I should be dismissed because there is also a fifth unstated element of a tortious interference claim -- that the parties must be competitors. See 17th St. Assoc.'s v. Markel Int'l Ins. Co., 373 F. Supp.2d 584, 600-01 (E.D. Va. 2005). Because Livia failed to plead a competitive relationship between JLLA and itself, JLLA contends that the tortious interference claim must be dismissed.

JLLA's position is not without support. A line of cases from the United States District Court for the Eastern District of Virginia have found insufficient tortious interference claims where there was no competitive relationship between the parties. See, e.g., 17th St. Assoc., 373 F. Supp. 2d 584, 600-01 (E.D. Va. 2005); Adeptech Sys., Inc. v. Federal Home Loan Mortg. Corp., No. 1:11CV383 LMB/JFA, 2011 WL 6820184, *17 (E.D. Va. Dec. 28, 2011); Whitaker v. Sheild, Civil Action No. 4:05cv130, 2006 WL 1321481, *11 (E.D. Va. May 3, 2006); see also Wenzel v. Knight, No. 3:14-cv-432, 2015 WL 3466863, *8 (E.D. Va. June 1, 2015) ("Implicitly required in this cause of action is the existence of a third party interferor who is not a party to the contractual relationship or, in the case of a business expectancy claim, is in competition with the plaintiff."); Cox v. MAG Mutual Insurance Company, Civil No. 3:14-cv-377-JAG, 2015 WL 1640513, *6 (E.D. Va. Apr. 9, 2015) ("Virginia case law also requires a competitive relationship between the party interfered with and the

interferor, as a separate element to state a prima facie case of tortious interference with a business expectancy.") (internal quotations omitted); Woody v. Carter, 70 Va. Cir. 198, 2008 WL 8201359, *1 (Va. Cir. Oct. 13, 2008) (listing the existence of a competitive relationship between the parties as an element of tortious interference with contractual relations claim). According to the 17th St. Assoc. court, "[t]he reason that the tort of intentional interference with a business expectancy always involves a competitive relationship and allegations of direct contact with the source of the expectancy are self-evident: they provide prima facie evidence of a motive to interfere and indicate that the interference actually took place." 373 F. Supp. 2d at 601.

According to JLLA, the existence of a competitive relationship is necessary in this case because without it there is no motive to interfere with Livia's relationship with Comcast. See JLLA's Memorandum in Support of Motion to Dismiss at pp. 5-6. Given that Comcast had guaranteed JLLA a commission regardless of whether it leased space from Livia or some other entity, JLLA contends this lack of evidence of motive is fatal to the tortious interference claim.

Livia argues that it is not required to allege the existence of a competitive relationship with JLLA in order to withstand dismissal because the Supreme Court of Virginia has never adopted

13

the so-called "fifth, unstated element" of a tortious interference claim. The court agrees.

While, as JLLA notes, tortious interference claims usually arise between competitors, the Virginia Supreme Court has never stated that a competitive relationship between the parties is a prerequisite to a tortious interference claim like that alleged herein. See Foster v. Wintergreen Real Estate Co., 81 Va. Cir. 353, 2010 WL 11020447, *8 (Va. Cir. Nov. 16, 2010) (overruling demurrer on the ground that a competitive relationship between the party interfered with and the interferor because that element had not been adopted by the Supreme Court of Virginia). As a court in Connecticut explained, the reasons for this are obvious:

> To hold a defendant who has tortiously interfered with another's business relations free from liability solely because the defendant has not injured a competitor is contrary to the law. . . . The lack of a competitive relationship can in no way justify unwarranted interference with another's business relations. Furthermore, a plaintiff's injuries in such a situation are no less real because they are caused by a noncompetitor.

Conrad v. Erickson, 41 Conn. App. 243, 246, 675 A.2d 906 (Conn. 1996).

However, Livia's claim against JLLA fails for an altogether different reason: "[a] person cannot intentionally interfere with his own contract" and, therefore, an agent acting within the scope of its agency cannot interfere with the contract of its principal. Fox v. Deese, 234 Va. 412, 427 (1987). The Complaint

14

specifically alleges that JLLA was acting as Comcast's agent during the acts complained of herein:

- Comcast employed or was otherwise associated with JLLA and its agent, for their assistance and services in aiding it with leasing and negotiating leases for its operations in the Commonwealth of Virginia.

- By 2013, Comcast had engaged JLLA and certain of its agents and employees to represent it to consult and provide services in leasing and negotiating leases for its operations in the mid-Atlantic region including the Commonwealth of Virginia.

- In providing services to Comcast, JLLA assigned its agent or employee Paula Thompson ("Thompson") as its agent representing Comcast and to act as a real estate salesperson to lease or negotiate the renewal of the Lease Agreements on behalf of Comcast with the Plaintiff.

- Comcast engaged JLLA and its personnel for the purpose of locating and procuring properties for Comcast to lease. The services offered by JLLA and its personnel to the Plaintiff were for the purpose of locating and procuring tenants for its property.

Complaint ¶¶ 4, 13, 14, and 21.

Furthermore, there is no allegation that JLLA was acting outside the scope of that agency in its negotiations on Comcast's behalf.[2]  Indeed, as plaintiff concedes, the shifting of JLLA's

_____

[2] In its brief and at oral argument, regarding the intracorporate immunity doctrine and its applicability to the business conspiracy claim herein , Livia cites the case of Grayson Fin. Am., Inc. v. Arch Specialty Ins. Co., 2:05 CV 461, 2006 WL 290513, at *3 (E.D. Va. Feb. 6, 2006), for the proposition that a business conspiracy claim is not subject to dismissal where a plaintiff alleges a conspiracy between a principal and agent and  said agent was acting outside the scope of that agency.  Id. ("If an agent acts outside[] the scope of the agency relationship, the agent is considered a separate actor for the purposes of the conspiracy. . . .  Plaintiff has sufficiently alleged that Kesler was acting outside the scope of

15

fee to Livia would economically benefit Comcast, JLLA's client.
See Complaint ¶ 29 ("Comcast was economically motivated as it
stood to secure the continuation of significant and valuable
services from JLLA and Thompson should they locate a landowner
from which to lease comparable space with that land owner
agreeing to pay Thompson and JLLA."). While plaintiff may
disagree with JLLA's negotiation tactics and what it repeatedly
refers to as JLLA's "illegal actions," according to plaintiff,
JLLA's actions were taken in furtherance of its work on Comcast's
behalf and, therefore, the claim for tortious interference fails.
Cleco Construction Co. v. Richmond Metropolitan Authority, No.
LF-421-4, 2000 WL 20606, *1 (Va. Cir. Ct. Jan. 10, 2000)
("Specifically, HNTB argues that since all of its actions at
issue in this case were taken as an agent of RMA, and since an
agent cannot tortiously interfere with the contract of its
principal, . . . HNTB cannot be held liable for tortious
interference with the contract between Cleco and RMA. The court
agrees. . . . HNTB worked for RMA. Whatever it did to further
that work, right or wrong, was within the scope of its authority.
It could not tortiously interfere with its principal's
contract.") (emphasis added); see also Wenzel v. Knight, No.

_____

the agency relationship in furtherance of the conspiracy.").
However, Grayson Financial does not help plaintiff herein
because, as noted above, there is no allegation that JLLA was
acting outside the scope of its agency.

16

3:14-cv-432, 2015 WL 3466863, *8 (E.D. Va. June 1, 2015)
(dismissing tortious interference claim where plaintiff failed to
plead facts showing that any agents acted outside the scope of
their employment or agency relationships with the principal);
Neil v. Wells Fargo Bank N/A, Civil Action No. 1:13-cv-644, 2013
WL 4782030, *2 (E.D. Va. Sept. 4, 2013)(dismissing tortious
interference with contract claim because "Wells Fargo serviced
the loan as an agent of the lender and acted within the scope of
its agency when processing Plaintiffs' request for a loan
modification.  Therefore, as an agent of the lender, Wells Fargo
cannot interfere with the relationship between the lender and
borrower."), *vacated and remanded on other grounds*, 596 F. App'x
194 (4th Cir. 2014); Atta v. Nelson, Civil Action No. 7:11-cv-
00463, 2012 WL 178355, *4 (W.D. Va. Jan. 23, 2012) (dismissing
tortious interference claim because alleged tortfeasor "was
carrying out responsibilities imposed by the Board" and "[i]n
carrying out those responsibilities, [ ] was not acting as an
officious, third-party intermeddler in Dr. Atta's contract.
Consequently, he was not a third party subject to liability for
tortious interference."); Smith v. Purnell, No. 1:11cv922, 2011
WL 6140868, *7 (E.D. Va. Dec. 9, 2011) (noting that "Fox
establishes a general principal-agent rule" that an agent cannot
be liable for tortious interference with a contract of which his
principal was a party and this rationale also applies to tortious

17

interference with business expectancy); <u>Michigan Mutual Ins. Co.</u> <u>v. Smoot</u>, 128 F. Supp. 2d 917, 925 (E.D. Va. 2000) (dismissing tortious interference with contract claim because "<u>Fox v. Deese</u> states the rule that an agent cannot as a matter of law interfere with his principal's contract. . . . <u>Fox</u> establishes a general principal-agent rule. Because the Attorneys were in a principal-agent relationship with the Worker, a claim of tortious interference with contract will not lie."); <u>Brown v. Loudoun Golf</u> <u>and Country Club, Inc.</u>, 573 F. Supp. 399, 404 (E.D. Va. 1983) ("[O]nly a third-party to the contract can be held liable for intentional interference. As to the Club, Bogle was a not a third-party; he was acting as the Club's agent. The Court accordingly dismisses the intentional interference with contract claim."); <u>Foster v. Wintergreen Real Estate Co.</u>, 81 Va. Cir. 353, 2010 WL 11020447, *8 (Va. Cir. Nov. 16, 2010) (sustaining demurrer on tortious interference with business expectancy claim where "under the allegations, nothing more than the principal and its agents are alleged to have interfered"); <u>Ashco Int'l Inc. v.</u> <u>Westmore Shopping Ctr. Assocs.</u>, 42 Va. Cir. 427, 1997 WL 1070624, *5 (Va. Cir. Ct. June 19, 1997) ("A single entity, accordingly, cannot conspire with itself or intentionally interfere with its own contract. . . . A principal and an agent are not separate persons for purposes of a conspiracy or tortious interference action and, likewise, cannot conspire with each other or

18

interfere with their own contractual relationship."); <u>Little
Professor Book Company of Reston, v. Reston North Point Village
Limited Partnership</u>, 41 Va. Cir. 73, 1996 WL 1065614, *6 (Va.
Cir. Ct. Sept. 27, 1996) (sustaining demurrer to tortious
interference with business contract claim where "Amended Motion
for Judgment [alleged] that Lerner is an agent of RNPVLP. Thus,
RNPVLP and Lerner are the same entity for purposes of this
demurrer.").

JLLA was retained by Comcast to negotiate leases on its
behalf. Complaint at ¶ 14. Therefore, it is illogical to hold
JLLA liable for tortious interference with a prospective contract
when it had been retained for the express purpose of securing
such a contract. Based on the foregoing, the motion to dismiss
Count I is GRANTED.

Furthermore, the court finds that Livia has failed to
sufficiently plead that JLLA employed improper methods in
interfering with the prospective Comcast contract. <u>See
Skillstorm, Inc. v. Electronic Data Systems, LLC</u>, 666 F. Supp.2d
610, 615-16 (E.D. Va. 2009) (dismissing tortious interference
claim where plaintiff failed to sufficiently plead use of
improper methods). Livia takes great exception to JLLA's hard-
line stance that Livia would "pay the commission or there will
not be a deal." Complaint § 18. Indeed, it is clear that this
is what lies at the heart of this dispute. <u>See</u> Livia's

Memorandum in Opposition to Comcast's Motion to Dismiss at p. 7
("Moreover, Comcast hired Jones Lang LaSalle - not Mrs. Welsh
[Livia] . . . (Complaint, ¶ 17). Comcast is certainly free to
contract with whomever it chooses, but it is not free to force
others to pay for the services it receives. There are laws,
rules, and principles of decency that govern the way in which
businesses are required to interact."). Livia was upset about
being asked to pay JLLA's brokerage fee - - even if it was
ultimately to be borne by Comcast - -[3] because JLLA was retained
by Comcast, not Livia. However, there is nothing inherently

---

[3] The email exchange between JLLA and Livia indicated that

> The real estate personnel at Comcast realize that the
> cost of the commission will be rolled into the
> transaction, it is their preferred way of doing
> business. The Comcast real estate dept. for the Mid-
> Atlantic region is very small; internally, there's no
> way they could handle all their real estate deal[s]
> each year. So they elect to have outside companies
> perform this work on their behalf and the cost of the
> work is borne by each transaction.

Exhibit A to Comcast's Memorandum in Support of Motion to
Dismiss. The parties disagree as to the interpretation of the
foregoing email, i.e., whether Comcast ultimately would bear the
cost of the commision. However, whether Comcast was ultimately
to bear the cost of JLLA's commission is not dispositive of the
motions to dismiss.

In considering the dismissal of a complaint under Rule
12(b)(6), a court "may consider documents attached to the
complaint, . . . as well as those attached to the motion to
dismiss, so long as they are integral to the complaint and
authentic." Sec'y of State for Defence v. Trimble Navigation
Ltd., 484 F.3d 700, 705 (4th Cir. 2007). In this case, the email
exchange between the parties is specifically referenced in the
Complaint. See Complaint ¶¶ 16-18. Accordingly, the court may
consider the emails.

tortious about this type of negotiation. Indeed, it is rather commonplace in the business world to negotiate the shifting of costs and fees. At most, the allegations in the Complaint suggest that both JLLA and Livia took a hard-line stance with respect to their positions on who would pay Livia's commission. Livia cannot play hardball and then complain when it loses.

Of Livia's refusal to sign the agreement to pay JLLA's commission, the inference to be made is that Livia did not want to pay for something that it didn't buy - - i.e., Comcast retained JLLA so Comcast should be the one paying JLLA's fees. However, this does not rise to the level of improper methods necessary to support a tortious interference claim. See, e.g., Frank Brunckhorst Co., LLC v. Coastal Atlantic, Inc., 542 F. Supp.2d 452, 464 (E.D. Va. 2008) ("With respect to the claim that, after the relationship between Coastal and Brunckhorst had ended, Brunckhorst `threatened' certain retailers that, if they bought Thumann's products from Coastal, they would not be able to purchase Boar's Head products, this again fails to rise to the level of improper interference. Although perhaps unsavory, Brunckhorst tactics in threatening to withdraw supplies of Boar's Head products to those retailers who decided to purchase Thumann's products from Coastal were within its legal rights. As Brunckhorst points out, this is the essence of competition in a free society."). It is the mere negotiation of business terms.

To find otherwise would open the door to courts insinuating themselves in arms length business negotiations.

Furthermore, Thompson's licensing status and the Hoffman decision do not lead to a different conclusion. Notably, the chronology, as laid out in the Complaint, makes clear that the fact that Thompson was unlicensed was not the reason for Livia's refusal to pay JLLA's commission. The demand for a commission and subsequent refusal to pay it happened in January 2014. The district court decision in Hoffman was not handed down until April 2014 and, Comcast was only made aware of Thompson's lack of a license in June of 2014. Simply put, Livia's allegations are undermined by the facts of the case. In addition, as the Fourth Circuit's decision in Hoffman confirms, regulation of the real estate profession in Virginia is delegated to the Virginia Real Estate Board. Jones Lang LaSalle Americas, Inc. v. Hoffman Family, LLC, No. 14-1454, 2015 WL 1543582, *3 n. 3 (4th Cir. Apr. 8, 2015). Plaintiff cannot rely on what essentially would be a contract dispute[4] in order to resuscitate a failed tort claim. JLLA's use of an unlicensed real estate agent, while certainly improvident, does not provide a cause of action in tort for Livia. As Virginia's highest court has made clear,

> the law will not provide relief to every disgruntled
> player in the rough-and-tumble world comprising the

---

[4] Livia would possibly have a contract claim against JLLA if it had signed the proposed agreement.

competitive marketplace. . . .  The fact that Virginia recognizes the existence of the tort of intentional interference with a contract does not mean that every contract relationship which is terminated or disrupted through the interference of a third party promoting its own interests will result in tort liability for that party.  Rather, the law provides a remedy in tort only where the plaintiff can prove that the third party's actions were illegal or fell so far outside the accepted practice of that rough-and-tumble world as to constitute improper methods.

Lewis-Gale Medical Center, LLC v. Alldredge, 282 Va. 141, 153 (2011) (internal citations and quotations omitted).

For all the reasons discussed above, the motion to dismiss Count I is GRANTED.

B.    *Business Conspiracy Claim*

Virginia Code § 18.2-499, commonly known as Virginia's Business Conspiracy statute, imposes liability on "[a]ny two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of . . . willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever. . . ."  To prevail under the conspiracy statute, a plaintiff must prove the following by clear and convincing evidence: (1) concerted action; (2) legal malice; and (3) causally related injury.  Schlegel v. Bank of America, N.A., 505 F. Supp.2d 321, 325 (W.D. Va. 2007).

Furthermore, with respect to the necessity of an underlying tort for a conspiracy claim to be viable, Virginia's higest court has stated:

23

Because there can be no conspiracy to do an act
that the law allows, <u>Werth</u>, 160 Va. at 855, 171 S.E. at
259, we have held that "an allegation of conspiracy,
whether criminal or civil, must at least allege an
unlawful act or an unlawful purpose" to survive
demurrer.  <u>Hechler Chevrolet, Inc. v. General Motors
Corp.</u>, 230 Va. 396, 402, 337 S.E.2d 744, 748 (1985).
In other words, actions for common law civil conspiracy
and statutory business conspiracy lie only if a
plaintiff sustains damages as a result of an act that
is itself wrongful or tortious.  <u>See</u> <u>Beck v. Prupis</u>,
529 U.S. 494, 501, 120 S. Ct. 1608, 146 L. Ed.2d 561
(2000); <u>see also</u> <u>Almy v. Grisham</u>, 273 Va. 68, 80, 639
S.E.2d 182, 188 (2007) ("[I]n Virginia, a common law
claim of civil conspiracy generally requires proof that
the underlying tort was committed."); <u>Werth</u>, 160 Va. at
855, 171 S.E. at 259 ("'To give action there must not
only be conspiracy, but conspiracy to do a wrongful
act.'") (quoting <u>Transportation Co. v. Standard Oil
Co.</u>, 50 W. Va. 611, 40 S.E. 591, 594 (1901)); <u>McCarthy
v. Kleindienst</u>, 741 F.2d 1406, 1413 n. 7 (D.C. Cir.
1984) ("[C]onspiracy allegations . . . do not set forth
an independent cause of action; instead, such
allegations are sustainable only after an underlying
tort claim has been established."); <u>Halberstam v.
Welch</u>, 705 F.2d 472, 479 (D.C. Cir. 1983) ("Since
liability for civil conspiracy depends on performance
of some underlying tortious act, the conspiracy is not
independently actionable; rather, it is a means for
establishing vicarious liability for the underlying
tort."); <u>Koster v. P & P Enters.</u>, 248 Neb. 759, 539
N.W.2d 274, 278 (1995) ("[A] claim of civil conspiracy
is not actionable in itself, but serves to impose
vicarious liability for the underlying tort of those
who are a party to the conspiracy."); <u>Selle v. Tozser</u>,
786 N.W.2d 748, 756 (S.D. 2010) ("[C]ivil conspiracy is
merely a method of establishing joint liability for the
underlying tort.").

<u>Dunlap v. Cottman Transmission Sys., LLC</u>, 287 Va. 207, 215-16

(2014).

Therefore, without "the underlying tort, there can be no

conspiracy to commit the tort."  <u>Commercial Bus. Sys. v. Halifax

Corp.</u>, 253 Va. 292, 300 (1997).  Having found that Livia's

tortious interference claim fails, the business conspiracy claim should fail as well.  See Virginia Vermiculite, Ltd. v. Historic Green Springs, Inc., 307 F.3d 277, 284 (4th Cir. 2002) (no statutory conspiracy claim where there was no underlying violation); Microstrategy Services Corp. v. OpenRisk, LLC, No. 1:14cv1244 (JCC/IDD), 2015 WL 2126924, *2 (E.D. Va. May 6, 2015) (dismissing common law and statutory business conspiracy claims where the underlying tort claim failed); Citizens for Fauquier County v. SPR Corp., 37 Va. Cir. 44, 1995 WL 1055819, *5 (Va. Cir. Mar. 27, 1995) ("Where there is no actionable claim for the underlying alleged wrong, there can be no action for civil conspiracy based on that wrong.").

With respect to Comcast's argument that there is no conspiracy herein because Comcast did nothing but that which the law allows, it is important to reiterate what this case is about - - a failed negotiation for the renewal of a commercial lease. There is no allegation, nor could there be, that Comcast had to negotiate with Livia, much less enter into a new lease.  A person cannot be liable for conspiracy to do that which the law allows. See Hechler Chevrolet, Inc. v. Gen. Motors Corp., 230 Va. 396, 402 (1985) ("[T]here can be no conspiracy to do an act the law allows.").  Given that Comcast was acting within its legal rights in choosing not to enter into a contract with Livia, Comcast insists that plaintiff's conspiracy claim must fail.

25

Livia's conspiracy claim also fails for the same reason its tortious interference claim fails: an agent cannot be liable for conspiring with its principal. Charles E. Brauer Co., Inc. v. NationsBank of Virginia, N.A., 251 Va. 28, 36 (1996) ("[A] conspiracy was a legal impossibility because a principal and an agent are not separate persons for purposes of the conspiracy statute."); see also Perk v. Vector Resources Grp., Ltd., 253 Va. 310, 317 (1997) (sustaining demurrer to conspiracy claim on ground that defendants were not separate entities where plaintiff alleged "that a principal-agent or an employer-employee relationship existed between the several Defendants"); Rogers v. Deane, 992 F. Supp.2d 621, 633 (E.D. Va. 2014) (for purposes of a business conspiracy claim under Virginia law, "[i]f a principal/agent or an employer/employee relationship exists between the parties, the parties are not separate entities."). Because JLLA was acting as Comcast's agent during the acts complained of herein, the conspiracy claim should be dismissed.

Even if Livia could get over the hurdles of having its underlying tort claim dismissed and the existence of an agency relationship between JLLA and Comcast, it still has not alleged the necessary elements to support a plausible business conspiracy claim. In order to establish that there has been "concerted action," a plaintiff must prove that the defendants "combined together to effect a preconceived plan and unity of design and

26

purpose." <u>Bay Tobacco, LLC v. Bell Quality Tobacco Prods., LLC</u>, 261 F. Supp.2d 483, 499 (E.D. Va. 2003) (internal quotation marks omitted). After all, this "common design is the essence of the conspiracy." <u>Id.</u> "Conspiracy is not established simpl[y] by lumping the defendants altogether because the heart of conspiracy is an agreement and a conscious decision by each defendant to join it." <u>Jaggars v. Sandy Spring Bank</u>, No. 6L14-CV-00015, 2014 WL 4251003, *3 (W.D. Va. Aug. 28, 2014) (quoting <u>SD3, LLC v. Black & Decker (U.S.), Inc.</u>, Civil Action No. 1:14-cv-191, 2014 WL 3500674, *3 (E.D. Va. Jul. 15, 2014)) (internal quotations omitted). To survive a motion to dismiss, then, a plaintiff "must at least plead the requisite concert of action and unity of purpose," and must do so "in more than mere conclusory language." <u>Bay Tobacco, LLC</u>, 261 F. Supp.2d at 499. (internal quotation marks omitted).

In the instant case, Livia fails to plead concerted action on the part of Comcast and JLLA in anything other than conclusory terms. <u>See</u> Complaint ¶ 44 ("Upon information and belief JLLA, by virtue of the conduct of its agents, including Thompson, described herein, procured the participation, cooperation, agreement or other assistance of Comcast in entering a combination, association, agreement, and/or mutual understanding for the purpose of willfully and maliciously injuring Plaintiff in its reputation, trade, business, or profession."). Likewise,

27

Livia's more particularized allegations also fail to establish concerted action. Livia contends:

> 30. Upon learning that Thompson and JLLA were conducting business illegally and without required licensure, on June 3, 2014, the Plaintiff informed Comcast of this default.

> 31. Upon information and belief, after refusing the illegal demands for commissions, Thompson and JLLA persuaded Comcast not to exercise its option to renew the Lease Agreements with the Plaintiff.

> 32. With knowledge of illegal actions by JLLA and Thompson, Comcast acceded to the efforts of JLLA and Thompson and it declined to renew its Lease Agreements with Plaintiff.

Complaint ¶¶ 30-32. The existence of an agreement between JLLA and Comcast cannot be inferred from the allegations made in the above-cited paragraphs. Livia merely contends that Thompson and JLLA "persuaded" Comcast not to renew the Lease Agreements and that Comcast "acceded to the efforts of JLLA and Thompson." Such allegations fall short of showing the requisite agreement. Long v. Old Point Bank of Phoebus, 41 Va. Cir. 409, 1997 WL 33616272, *17 (Va. Cir. Ct. Feb. 25, 1997) ("Simply pleading that Old Point "caused" the trustee to take some action does not provide any evidence that Old Point and the Trustee agreed to accomplish this act."); see also Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co., 191 F. Supp.2d 652, 664 (E.D. Va. 2002) (dismissing statutory conspiracy claim where plaintiff "provide[d] no specific factual basis, other than conclusory allegation that

Defendants conspired with iOwn, Genesis and others, to support its claim for conspiracy to injure business").

Livia's complaint also fails to show legal malice. "Legal malice" requires a showing "that the defendant acted intentionally, purposefully, and without lawful justification" to injure the plaintiff. Simmons v. Miller, 261 Va. 561, 578 (2001). A plaintiff need not prove that the defendant's primary and overriding purpose was to injure the plaintiff's reputation, trade, or business. See Commercial Bus. Sys., Inc. v. Bellsouth Services, Inc., 249 Va. 39, 453 S.E.2d 261, 267 (1995) ("[W]e do not think that, as a general proposition, the conspiracy statutes require proof that a conspirator's primary and overriding purpose is to injure another in his trade or business. The statutes do not so provide, and such a requirement would place an unreasonable burden on a plaintiff."). It is important, however that a plaintiff prove that such a purpose was at least one of the purposes of the conspiracy. Schlegel v. Bank of America, N.A., 505 F. Supp.2d 321, 326 (W.D. Va. 2007).

Plaintiff has failed to allege any facts that indicate Comcast acted with legal malice. On the contrary, Livia alleges that Comcast was motivated to act as it did for economic reasons, suggesting a legitimate non-malicious motive. There is nothing in the Complaint which suggests, nor can the court reasonably infer from the facts presented, that Comcast was motivated by a

desire to harm Livia's business. See Jaggars v. Sandy Spring Bank, Civil No. 6:14-cv-00015, 2015 WL 1648556, *3 (W.D. Va. Apr. 14, 2015) (granting summary judgment on business conspiracy claim where "fact finder would need to pile inference upon inference in order" to find defendant intended to harm plaintiff's business interests); Rogers v. Deane, 992 F. Supp.2d 621, 635 (E.D. Va. 2014) (finding business conspiracy claim insufficient where there was no evidence that defendant sued conspired to injure plaintiff's business); CVLR Performance Horses, Inc. v. Wynne, 977 F. Supp.2d 598, 605 (W.D. Va. 2013) (dismissing statutory conspiracy claim where legal malice could not be inferred from complaint because nothing was said about "the intention of the alleged co-conspirators" in anything other than conclusory terms); Skillstorm, Inc. v. Electronic Data Sys., LLC, 666 F. Supp.2d 610, 618-19 (E.D. Va. 2009) (dismissing statutory conspiracy claim because "there is no factual support for the allegation that Defendants. . . willfully and maliciously injured [plaintiff] in its business"); Mountain Area Realty, Inc. v. Wintergreen Partners, Inc., Civil No. 3:07cv00016, 2007 WL 4561293, *5 (W.D. Va. Dec. 21, 2007) (dismissing business conspiracy claim where plaintiff had "failed to plead facts alleging malicious conduct aimed specifically at plaintiff" and "Complaint does not contain allegations giving rise to a reasonable inference of legal malice"); Falwell v. Penthouse

30

Int'l, Ltd., 521 F. Supp. 1204, 1209 (W.D. Va. 1981) (dismissing conspiracy claim where "[t]here is simply no basis at this time for the general allegation that any of the defendants conspired for the specific purpose of injuring the plaintiff.").

For purposes of a motion to dismiss, the court must accept as true the allegations in the pleadings but it is not required to leave its common sense behind. Setting aside the host of reasons why Comcast might have chosen not to enter into a new lease with Livia - - better location, lower rent, etc. - - to allow plaintiff's claim to proceed the court must accept as fact plaintiff's mere conjecture that Comcast chose to go elsewhere because of Livia's unwillingness to pay JLLA's commission. This the court cannot do in the absence of any facts to support this claim. Schlegel v. Bank of America, N.A., 505 F. Supp.2d 321, 328-29 (W.D. Va. 2007)(finding conspiracy claim insufficient where plaintiff failed to allege legal malice and "because there are no facts in his complaint that would support an inference of such a purpose").

31

## IV. Conclusion

For the reasons discussed above, the motions to dismiss are **GRANTED**. The Clerk is requested to send a copy of this Memorandum Opinion and Order to counsel of record.

**IT IS SO ORDERED** this 7th day of August, 2015.

ENTER:

David A. Faber
Senior United States District Judge

32